WESTERN HILLS RESIDENTIAL CARE, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent W. Hills Residential Care v. Comm'r
Docket No. 28124-14L United States Tax Court
2017 U.S. Tax Ct. LEXIS 32; May 31, 2017, Filed
Decision text below is the first available text from the court; it has not been editorially reviewed by LexisNexis. Publisher's editorial review, including Headnotes, Case Summary, Shepard's analysis or any amendments will be added in accordance with LexisNexis editorial guidelines.
Docket No. 28124-14L. Filed May 31, 2017.
David J. Looby, for petitioner.
Ann Louise Darnold, for respondent.
MEMORANDUM OPINION
PARIS, Judge: In this collection due process (CDP) case, petitioner seeks
review pursuant to section 6330(d)(1)1 of the determination by the Internal
1Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.
- 2 -
[*2] Revenue Service (IRS or respondent) to uphold a notice of intent to levy.
Petitioner filed a motion for summary judgment under Rule 121, and respondent
filed a subsequent motion for summary judgment under Rule 121. The questions
for decision are: (1) whether IRS Settlement Officer Alcorte (SO Alcorte) abused
her discretion in rejecting petitioner's proposed installment agreement and
sustaining the proposed collection action; (2) whether she abused her discretion in
denying petitioner's request to have its account put on currently-not-collectible
(CNC) status; and (3) whether she had any prior involvement with respect to the
unpaid tax. For the reasons explained below, the Court will grant respondent's
motion for summary judgment and deny petitioner's.
Background
The following facts are based on the parties' pleadings and motion papers,
including the attached exhibits and affidavits.2 SeeRule 121(b). Petitioner oper-
ates a nursing home facility in a rural community of fewer than 3,000 residents.
Its principal place of business was in Oklahoma at the time the petition was filed.
2Each party requests that certain of the other's affidavits and exhibits be stricken from the record because they were not part of the original administrative record. Although conflicting authority exists as to whether the Court's review in CDP cases is limited to the administrative record, neither the U.S. Court of Appeals for the Tenth Circuit nor the U.S. Court of Appeals for the D.C. Circuit has specifically ruled on the issue. The Court denies both requests.
- 3 -
[*3] The case at issue relates to petitioner's outstanding tax liability from Form
941, Employer's Quarterly Federal Tax Return, for the period ending December
31, 2013. For that period, petitioner timely filed its Form 941 but failed to pay the
reported tax liability of $12,317.36 for that quarter. On March 31, 2014,
respondent assessed the tax reported on the return and began collection efforts.
On April 24, 2014, respondent issued to petitioner a Letter 1058, Final
Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing. In
response petitioner timely submitted a Form 12153, Request for a Collection Due
Process or Equivalent Hearing, seeking to enter into a $6,000-per-month
installment agreement for its unpaid employment tax liability. The CDP hearing
request stated that if respondent were permitted to levy, petitioner's difficulty with
private pay collections would render it unable to pay either the employment tax
balance it owed or its current taxes. Petitioner's CDP hearing request, however,
did not dispute the underlying employment tax liability; petitioner checked the
collection alternative boxes for "Installment Agreement" and "I Cannot Pay
Balance".
Respondent mailed petitioner a letter dated June 6, 2014, acknowledging
receipt of petitioner's CDP hearing request, and SO Alcorte subsequently mailed
petitioner a letter scheduling a CDP hearing for August 28, 2014. SO Alcorte's
- 4 -
[*4] letter advised petitioner that it did not qualify for consideration of an
installment agreement because it was not in compliance with its employment tax
deposit requirements for the taxable period ending June 30, 2014. The letter
further advised petitioner that to qualify for a collection alternative it had to
provide to SO Alcorte the following items no later than August 11, 2014: (1) a
completed Form 433-B, Collection Information Statement for Businesses, and (2)
evidence that it had made the required Federal employment tax deposits for the
current taxable period. SO Alcorte informed petitioner that respondent could not
consider collection alternatives without the information requested.
Petitioner did not submit the requested Form 433-B until August 27, 2014,
one day before the scheduled hearing, asserting that the proposed levy would
result in "economic hardship" and, therefore, "this situation * * * mandate[s] the
release of the proposed levy". The Form 433-B was neither signed nor certified by
a corporate officer. The Form 433-B listed petitioner's monthly income of
$18,455 and monthly expenses of $25,599.94, reflecting a net negative monthly
income. It listed no balance for petitioner's bank account and accounts receivable,
no outstanding liabilities,3 and no real property.4
3Contained in the record are two of petitioner's accounting spreadsheets-- one from December 2013, the other from June 2014. The 2013 spreadsheet shows
(continued...)
- 5 -
[*5] In preparation for the CDP hearing SO Alcorte reviewed the administrative
record and noted in her case activity report that petitioner did not appear to qualify
for an installment agreement. She also noted that petitioner offered no explanation
regarding how it would make its proposed monthly installment agreement
payments of $6,000 while its net revenue was negative and that there was no
equity in assets.
On August 28, 2014, the parties held a CDP hearing. Petitioner's
representative did not contest petitioner's underlying tax liability but instead
reiterated that it would suffer economic hardship if the proposed collection action
were sustained. And he requested that petitioner's account be placed in CNC
status.
SO Alcorte explained to petitioner's representative that she would not
consider petitioner's economic hardship argument because the economic hardship
3(...continued)
interest expense of $3,046.79 for December and an annual total of $14,190.52. The 2014 spreadsheet shows interest expense of $4,976.19 through the end of June. Petitioner offers no explanation for this discrepancy.
4The 2013 spreadsheet shows a property tax payment but no rent for the entire year; the 2014 spreadsheet shows a building rent payment in June of $4,179.52 but to date, only $4,359.52 in total rent payments. The 2014 spreadsheet does not show any property tax payments. Petitioner offers no explanation for this discrepancy either.
- 6 -
[*6] exception is not available to corporations. She noted that because (1)
petitioner was not in compliance with its Federal employment tax deposit
obligations and (2) the economic hardship exception is not applicable to
corporations, she would be sustaining the proposed collection action and closing
the case. She did, however, agree to file an Appeals Referral Investigation (ARI)
request to investigate whether petitioner could qualify for CNC status.
On October 30, 2014, having received no response regarding the ARI, SO
Alcorte followed up with her request. The ARI had, in fact, been evaluated, and
her group manager spoke with petitioner's representative directly. During that
conversation the manager explained that petitioner did not qualify for CNC status
because, notwithstanding the outstanding employment tax liability, petitioner had
not shown it could continue to remit its current Federal employment tax amounts
and remain in business. In response, petitioner's representative indicated that
petitioner would pay the outstanding amount in full.5
SO Alcorte verified that the assessment was properly made and that all other
requirements of applicable law and administrative procedure had been met. She
thereupon closed the case and, on November 13, 2014, issued to petitioner a notice
5Petitioner does dispute this fact in its response to respondent's motion for summary judgment.
- 7 -
[*7] of determination sustaining the notice of intent to levy with respect to the
Form 941 tax period ending December 31, 2013.
Petitioner timely petitioned this Court with respect to the notice of
determination and filed a motion for summary judgment. Respondent also filed a
motion for summary judgment.
Discussion
I. Summary Judgment and Standard of Review
The purpose of summary judgment is to expedite litigation and avoid
unnecessary and time-consuming trials. Fla. Peach Corp. v. Commissioner, 90
T.C. 678, 681 (1988). The Court may grant summary judgment when there is no
genuine dispute as to any material fact and a decision may be rendered as a matter
of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992),
aff'd, 17 F.3d 965 (7th Cir. 1994). If a moving party properly makes and supports
a motion for summary judgment, "an adverse party may not rest upon the mere
allegations or denials of such party's pleading" but must set forth specific facts, by
affidavit or otherwise, showing that there is a genuine dispute for trial. Rule
121(d).
- 8 -
[*8] Upon due consideration of the parties' motions, supporting declarations,
and responses thereto, the Court concludes that no material facts are in dispute and
that judgment may be rendered for respondent as a matter of law.
Where the validity of the underlying tax liability is properly at issue in a
collection case, the Court will review the matter on a de novo basis. Sego v.
Commissioner, 114 T.C. 604, 610 (2000). Where, as here, there is no dispute
concerning the underlying tax liability, the Court reviews the Commissioner's
administrative determination to proceed with collection for abuse of discretion.6
Id. Abuse of discretion exists when a determination is arbitrary, capricious, or
without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301,
320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).
II. Collection Due Process
In deciding whether the SO abused her discretion in sustaining the proposed
collection action, the Court considers whether she: (1) properly verified that the
requirements of any applicable law or administrative procedure have been met;
6Regardless of whether petitioner could have contested its underlying liability at the CDP hearing, this Court may consider a challenge to such a liability only if the taxpayer properly raised it before the SO, Giamelli v. Commissioner, 129 T.C. 107, 115 (2007), and again in its petition to this Court, seeRule 331(b)(4) ("Any issue not raised in the assignments of error shall be deemed to be conceded."). Petitioner did not raise this issue neither with SO Alcorte or in its petition. The Court accordingly deems it conceded.
- 9 -
[*9] (2) considered any relevant issues petitioner raised; and (3) determined
whether "any proposed collection action balances the need for the efficient
collection of taxes with the legitimate concern of * * * [petitioner] that any
collection action be no more intrusive than necessary." Seesec. 6330(c)(3).
Review of the record reveals that SO Alcorte conducted a thorough review
of petitioner's account, determined that the taxes had been properly assessed, and
verified that other requirements of applicable law and administrative procedure
were followed.
Petitioner's primary contention is that section 301.6343-1(b)(4)(i), Proced.
& Admin. Regs. (defining economic hardship only with respect to individual taxpayers), is invalid and that SO Alcorte abused her discretion in failing to consider its request for relief under the economic hardship provision of section 6343(a)(1)(D). This contention is incorrect. This Court recently released its Opinion in Lindsay Manor Nursing Home, Inc. v. Commissioner (Lindsay ManorI), 148 T.C. __ (Mar. 23, 2017), finding that section 301.6343-1(b)(4)(i), Proced.
& Admin. Regs., is valid and that the economic hardship relief provided by section 6343(a)(1)(D) is available only to individual taxpayers. And in a companion Memorandum Opinion, Lindsay Manor Nursing Home, Inc. v. Commissioner, T.C. Memo. 2017-50, the Court concluded that the SO did not abuse her discretion
- 10 -
[*10] in failing to consider a request for economic hardship relief made by a
corporate taxpayer. SO Alcorte did not abuse her discretion in declining this
request either.
Petitioner argues alternatively that SO Alcorte abused her discretion in
rejecting its installment agreement request, in denying its request for its account to
be placed in CNC status, and in failing to adequately consider its "economic
hardship" in the balancing analysis required by section 6330(c)(3).7 Finally,
petitioner suggests that SO Alcorte was not impartial as required by section
6330(b)(3).
A. Petitioner's Installment Agreement Request
In its discretion, the IRS may enter into an installment agreement if it
determines that doing so will facilitate full or partial collection of a tax liability.
Seesec. 6159(a). The IRS also has discretion to reject a proposed installment
agreement (subject to certain restrictions not applicable here). See Thompson v.
Commissioner, 140 T.C. 173, 179 (2013); sec. 301.6159-1(a), (c)(1)(i), Proced. &
7In Lindsay Manor I, this Court found that sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs., is valid; accordingly, the economic hardship exception is available only to individuals. To the extent that petitioner's other arguments attempt to rehash this issue, they are summarily disregarded. The Court will, however, address petitioner's economic position with respect to SO Alcorte's sec. 6330(c)(3)(C) balancing analysis.
- 11 -
[*11] Admin. Regs. Consequently, in reviewing this determination, the Court
does not substitute its judgment for that of Appeals and decide whether in its
opinion petitioner's installment agreement should have been accepted. See
Woodral v. Commissioner, 112 T.C. 19, 23 (1999); Keller v. Commissioner, T.C.
Memo. 2006-166, aff'd in part, 568 F.3d 710 (9th Cir. 2009). Instead, the Court
reviews this determination for abuse of discretion.
Petitioner argues that it was an abuse of discretion for SO Alcorte to reject
its proposed installment agreement. The record, however, demonstrates that SO
Alcorte's rejection of petitioner's installment agreement was proper because
petitioner was not in compliance with its Federal employment tax deposit
obligations and because petitioner's income and expenses listed on its Form 433-B
did not reflect an ability of petitioner to pay the proposed installment payments of
$6,000 per month.8
1. Compliance With Federal Tax Obligations
In rejecting petitioner's proposed installment agreement, SO Alcorte noted
that petitioner was not in compliance with its current Federal employment tax
8The Court finds disingenuous petitioner's argument that SO Alcorte's notes in her case activity report constituted a predetermination. The notes indicate SO Alcorte's preparation for petitioner's CDP hearing and reflect a thorough review of the late-submitted Form 433-B and its attachments. This is not an abuse of discretion.
- 12 -
[*12] deposit obligations. Established IRS policy requires taxpayers to be in
compliance with current filing and estimated tax payment requirements to be
eligible for collection alternatives. See Reed v. Commissioner, 141 T.C. 248, 256-
257 (2013). Generally, current compliance with tax laws is a prerequisite to being
eligible for collection alternatives. See Cox v. Commissioner, 126 T.C. 237, 257
(2006), rev'd on other grounds, 514 F.3d 1119 (10th Cir. 2008). And despite
petitioner's contention, SO Alcorte was well within her discretion to require
compliance with current tax obligations. See Giamelli v. Commissioner, 129 T.C.
107, 111-112 (2007); cf. Christopher Cross, Inc. v. United States, 461 F.3d 610,
613 (5th Cir. 2006) (finding no abuse of discretion when settlement officer
rejected collection alternative because taxpayer was not in compliance with its tax
payment obligations); Reed v. Commissioner, 141 T.C. at 257 (same).
Petitioner argues that SO Alcorte abused her discretion because--even
though petitioner was not in compliance--she failed to consider that petitioner's
inability to remain current with its Federal tax deposits was a result of "industry
conditions beyond its control". To support its argument, petitioner cites Alessio
Azzari, Inc. v. Commissioner, 136 T.C. 178 (2011).
In Alessio Azzari, Inc., a lender stopped lending money to the taxpayer after
the Commissioner's settlement officer erroneously determined that the
- 13 -
[*13] Commissioner did not need to subordinate his lien on the taxpayer's
accounts to the lender's lien on the same accounts. Id. at 181-183. As a result, the
taxpayer was unable to stay current with its employment tax deposits after being in
compliance for six consecutive quarters. Id. at 183. The Commissioner denied the
taxpayer's installment agreement request because the taxpayer was no longer in
compliance. Id. at 183-184. The Court held that it was an abuse of discretion for
the Commissioner to deny the taxpayer's request for an installment agreement on
the basis of the taxpayer's failure to stay current on its tax deposits because the
settlement officer's erroneous interpretation of law led to the lender's decision to
stop lending money to the taxpayer, which led to the taxpayer's not being in
compliance. Id. at 194.
Unlike the taxpayer in Alessio Azzari, Inc., petitioner was indisputably not
in compliance when it requested an installment agreement. And because section
301.6343-1(b)(4)(i), Proced. & Admin. Regs., is valid, SO Alcorte's interpretation
was not erroneous. See Lindsay Manor I. Accordingly, SO Alcorte did not abuse
her discretion in rejecting petitioner's installment agreement request on the
grounds that petitioner was not in compliance.
- 14 -
[*14] 2. Ability To Make Proposed Installment Payments
SO Alcorte also analyzed and relied on petitioner's submitted Form 433-B,
which she determined did not reflect petitioner's ability to make the proposed
installment payments of $6,000 per month. Internal Revenue Manual (IRM) pt.
5.14.1.4(4) (June 1, 2010) states: "Installment agreements must reflect taxpayers'
ability to pay on a monthly basis throughout the duration of the agreements." A
taxpayer's ability to pay is determined by comparing his monthly income to
allowable expenses. Friedman v. Commissioner, T.C. Memo. 2013-44, at *9.
Therefore, a SO may accept, at minimum, a monthly payment equal to the excess
of a taxpayer's monthly income over the taxpayer's allowable expenses. Boulware
v. Commissioner, T.C. Memo. 2014-80, at *29, aff'd, 816 F.3d 133 (D.C. Cir.
2016). But it is not an abuse of discretion for a SO to reject a proposed
installment agreement when a taxpayer's monthly income does not support the
proposed payment. Id.; Lipson v. Commissioner, T.C. Memo. 2012-252 (finding
no abuse of discretion when the taxpayer's Form 433 could not support the
proposed installment agreement payments).
SO Alcorte assumed that the financial information petitioner provided was
correct. That information reflected net negative monthly income of over $7,000
and zero assets. And petitioner did not explain how it would afford monthly
- 15 -
[*15] installment payments of $6,000. Even if this had been her only reason for
rejecting petitioner's proposed installment agreement, SO Alcorte did not abuse
her discretion.
B. Petitioner's Request for CNC Status
Petitioner next challenges SO Alcorte's denial of its request for its account
to be placed in CNC status. IRM pt. 5.16.1.2.7 (Aug. 25, 2014), provides the
parameters to give CNC status to corporations that remain in business and are
unable to pay both the back taxes and the current taxes. This is exactly the
situation petitioner asserted to SO Alcorte in its CDP hearing request. Petitioner
reiterated its request during the CDP hearing, and SO Alcorte sought managerial
approval as she was required to. SeeIRM pt 5.16.1.5(1) (Aug. 25, 2014) ("The
decision to place an account in CNC status requires the approval of a manager.").
SO Alcorte's group manager (GM) participated in evaluating petitioner's
request for CNC status, speaking with petitioner's representative directly. During
their conversation the GM explained that petitioner would not be entitled to CNC
status because it was not, in fact, current with its tax liabilities, and the financial
information it submitted did not support its assertion that it could remain current if
allowed CNC status. In response, petitioner's representative indicated that since
CNC was not viable, petitioner would pay the outstanding amount in full. And
- 16 -
[*16] after the GM communicated the decision and reasoning to SO Alcorte, she
called petitioner's representative, informing him that she would be adopting the
recommendation that CNC status not be provided.
Petitioner argues that SO Alcorte was required to conduct her own
evaluation of its request and that she could not adopt her GM's reasoning. This
argument is not supported by the IRM provision requiring the opposite--that an
SO obtain approval of the decision regarding CNC status. Petitioner also argues
that SO Alcorte should have taken its economic hardship argument into account.
As discussed in Lindsay Manor I, the economic hardship exception of section
6343 is not available to corporations such as petitioner. And in any event, the
CNC hardship provision of the IRM specifically excludes corporations.9 See IRM
pt. 5.16.1.2.9 (Aug. 25, 2014). SO Alcorte did not abuse her discretion in
adopting the recommendation that petitioner not be provided CNC status. But to
the extent that petitioner's arguments can be construed to contest SO Alcorte's
balancing analysis under section 6330(c)(3)(C), the Court will evaluate them.
9"[T]he government is not required to continue subsidizing failing businesses by foregoing tax collection. Any other conclusion would create a bizarre tax system with perverse incentives for businesses to maintain themselves on the edge of insolvency in order to enjoy immunity from tax enforcement." Living Care Alts. of Utica, Inc. v. United States, 411 F.3d 621, 628 (6th Cir. 2005).
- 17 -
[*17] C. SO Alcorte's Balancing Analysis
Petitioner next argues that SO Alcorte either did not conduct the required
statutory balancing test or did not explain her reason for concluding that its
requirements were met. Petitioner suggests that it "proposed a viable collection
alternative that was less intrusive than enforced levy action" but then goes on to
argue that the financial documentation it submitted on Form 433-B demonstrated
that its expenses exceeded its income, it had no assets, and the business was
insolvent and had no ability to pay.
This Court also found in Lindsay Manor I that the section 6330(c)(3)(C)
balancing test properly takes into account a taxpayer's specific economic realities
and the consequences of a proposed collection action. On the basis of the Court's
thorough analysis of the record in this case, the Court concludes that there is no
material issue of fact regarding whether SO Alcorte properly balanced "the need
for the efficient collection of taxes" with the legitimate concern of petitioner that
"any collection action be no more intrusive than necessary." Seesec. 6330(c)(3).
At the time petitioner requested this installment agreement, it argued that a
levy would render it unable to meet its payroll and patient obligations.
Petitioner's own Form 433-B showed that its monthly expenses exceeded its
monthly income. Although there was an ongoing dialogue between petitioner's
- 18 -
[*18] counsel and SO Alcorte, petitioner gave no indication of how it would make
the proposed installment payments with negative monthly revenue and zero
assets.10
Although petitioner complains of the possibility of being forced to close its
doors to its patients11 and terminate its employees, this Court finds that SO Alcorte
gave due weight to petitioner's specific circumstances. The Government's interest
in efficiently collecting the amounts petitioner owed simply tipped the scale the
other way.
Furthermore, it is well established that rejecting a collection alternative
because of noncompliance with estimated tax payment requirements does not
violate the proper balancing requirement. See, e.g., Orum v. Commissioner, 123
T.C. 1 (2004), aff'd, 412 F.3d 819 (7th Cir. 2005); Friedman v. Commissioner,
T.C. Memo. 2015-196; Schwartz v. Commissioner, T.C. Memo. 2007-155. In
preparation for the CDP hearing SO Alcorte discovered that petitioner was not in
10The Court notes the inconsistency in petitioner's position. Petitioner listed on its Form 433-B zero assets and zero liabilities. But on its self-prepared accounting spreadsheets, petitioner reported it had made a property tax payment during 2013 and interest expense payments during both 2013 and 2014.
11The affidavit of Sam Jewell included with the petitioner's motion for summary judgment stated that petitioner is licensed for 28 beds but has only 3 beds occupied and does not receive any Federal or State funding. Petitioner's income was derived solely from private pay residents.
- 19 -
[*19] compliance with its current employment tax deposit obligations for the
taxable period ending June 30, 2014, and that petitioner did not provide proof of
making the required September 30, 2014, deposit. Upon consideration of
petitioner's financial position and its failure to remain in compliance with its
employment tax requirements, SO Alcorte determined that there was no alternative
to sustaining the notice of intent to levy; she explained the reasoning behind her
decision in the notice of determination. Accordingly, the undisputed material facts
establish that SO Alcorte did not abuse her discretion in conducting the section
6330(c)(3)(C) balancing test.
C. SO Alcorte's Impartiality
Next, petitioner argues that SO Alcorte's review of the documents
petitioner provided before the CDP hearing violates petitioner's section
6330(b)(3) right to a CDP hearing by an Appeals officer who had no prior
involvement with respect to the unpaid tax.
Section 6330(b)(3) requires a CDP hearing to be "conducted by an officer or
employee who has had no prior involvement with respect to the unpaid tax * * *
before the first hearing". Prior involvement exists only when (1) the taxpayer, the
tax, and the tax period at issue in the CDP hearing also were at issue in the prior
non-CDP matter and (2) the Appeals officer or employee actually participated
- 20 -
[*20] in the prior matter. Sec. 301.6330-1(d)(2), Q&A-D4, Proced. & Admin.
Regs.
Petitioner does not argue that SO Alcorte had prior involvement in an
earlier, non-CDP matter; rather, petitioner argues that, by reviewing petitioner's
documents before the CDP hearing, SO Alcorte was not impartial. Petitioner is
incorrect. The regulations clearly state that prior involvement means that an
Appeals officer actually participated in an earlier, non-CDP matter. Id. Because
petitioner does not assert that SO Alcorte participated in a prior non-CDP matter,
petitioner's argument must fail.
SO Alcorte verified that she had not had any prior involvement with respect
to the specific tax periods at issue. Because SO Alcorte did not participate in a
prior non-CDP matter concerning the same tax, taxpayer, and tax period at issue,
she was an eligible Appeals officer to preside over the CDP hearing. Accordingly,
the undisputed material facts establish that SO Alcorte did not abuse her discretion
by reviewing the information petitioner had provided before its CDP hearing.
III. Conclusion
Finally, petitioner argues that the Court should remand this case for
additional consideration. The Court is not convinced that a remand is necessary or
would be productive. See Lunsford v. Commissioner, 117 T.C. 183, 189 (2001);
- 21 -
[*21]Kakeh v. Commissioner, T.C. Memo. 2015-103, at *13. The purpose of a
remand is not to afford a "do over" for a taxpayer whose missteps during the CDP
process resulted in its collection alternative's being rejected. See Kakeh v.
Commissioner, at *13. It appears to the Court that petitioner is seeking a "do
over" here.
Finding no abuse of discretion in any respect, the Court will grant
respondent's motion for summary judgment and deny petitioner's. The Court has
considered all of the arguments made by the parties, and to the extent they are not
addressed herein, they are considered unnecessary, moot, irrelevant, or without
merit.
To reflect the foregoing,
An appropriate order and decision
will be entered.